**Opinion issued October 13, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00062-CR

———————————

**JOHN DANIEL BROOKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 330063**

## MEMORANDUM OPINION

A jury convicted appellant John Daniel Brooks of attempted capital murder in

1981, and assessed punishment at 99 years' confinement. Over thirty years after he

was convicted, Brooks filed a motion for post-conviction DNA testing in the trial

court, pursuant to Chapter 64 of the Texas Code of Criminal Procedure. *See* TEX.

CODE CRIM. PROC. arts. 64.01–64.05. The trial court denied Brooks's motion. Brooks appeals, contending that the trial court erred in denying his motion or, in the alternative, alleging ineffective assistance of counsel related to his appointed counsel's representation in the post-conviction proceedings. We affirm.

## Background

Brooks was convicted of attempted capital murder in 1981, and this Court affirmed on direct appeal. *Brooks v. State*, No. 01-81-0891-CR (Tex. App.—Houston [1st Dist.] Apr. 14, 1983) (not designated for publication). Brooks subsequently requested post-conviction DNA testing, alleging it would show that neither his nor the complainant's blood was on the knife used to secure the conviction. The trial court appointed Kelly Ann Smith to represent Brooks in the post-conviction proceeding.

After some investigation, Smith filed a motion to withdraw. In her motion, Smith asserted that Brooks was not entitled to post-conviction DNA testing because identity was never an issue in his case and because exculpatory test results would not establish that Brooks would not have been convicted. *See* TEX. CODE OF CRIM. PROC. art. 64.01 *et seq.* Smith's motion explained that Brooks initially sought to have the knife tested for DNA evidence, but during her investigation, Smith learned that all evidence remaining in the property room had been destroyed. On further

2

investigation, however, Smith learned that the crime lab still possessed fingernail scrapings from the complainant in Brooks's case.

Despite the existence of the fingernail scrapings, Smith nevertheless concluded that Brooks was not entitled to DNA testing because the results of the testing would not exculpate him given the other incriminating evidence. According to Smith, her investigation revealed that the complainant in the case had been stabbed seven times, severely beaten, restrained with a telephone cord, and sexually assaulted in her home. Following the attack, the complainant identified Brooks as the attacker and provided the police with his name and address. Smith's motion stated that the complainant later identified Brooks as her attacker from a photographic lineup and the police recovered latent palm and fingerprints left in blood in the complainant's house that examiners matched to Brooks. Smith noted that a mental health evaluation stated that Brooks claimed he acted in self-defense when stabbing the complainant and that the two engaged in consensual sexual intercourse.[1] Smith noted that nothing suggested that the complainant scratched her attacker; thus, the absence of Brooks's DNA or the presence of another's DNA in the victim's fingernail scrapings would not prove Brooks did not sexually assault

---

[1]   The mental health evaluation, police offense report, and affidavits referred to in Smith's motion were not attached to it and are not included in the clerk's record on appeal, which also does not contain the reporter's record from the jury trial.

3

and stab the complainant. *Id.* Accordingly, Smith requested that the trial court grant her leave to withdraw.

The trial court granted Smith's motion and denied Brooks's request for post-conviction DNA testing. In its order, the trial court took judicial notice of the clerk's file and found that Brooks was not entitled to DNA testing because (1) identity was never an issue and (2) exculpatory test results from the victim's fingernail scrapings would not establish that Brooks would not have been convicted. Brooks appealed.

## Discussion

In two issues, Brooks contends that (1) the trial court erred in denying his motion or, in the alternative, (2) he received ineffective assistance of counsel in the post-conviction proceeding.

## A. DNA Testing

### 1. Standard of Review

We review the trial court's decision with regard to DNA testing using a bifurcated standard of review. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We afford almost total deference to the trial court's determination of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues. *Id.*

## 2. Applicable Law

Under Chapter 64 of the Texas Code of Criminal Procedure, a convicted person may file a motion for DNA testing in the convicting court. TEX. CODE OF CRIM. PROC. art. 64.01(a-1). The motion must be accompanied by a sworn affidavit containing supporting facts. *Id.* The convicting court may order DNA testing if it finds that: (1) evidence still exists, is in a condition making DNA testing possible, and is subject to a chain of custody sufficient to establish that it has not been altered; (2) identity was or is an issue in the movant's case; and (3) the movant established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing and the request is not made to unreasonably delay the sentence. TEX. CODE OF CRIM. PROC. art. 64.03(a); *Prible v. State*, 245 S.W.3d 466, 467–68 (Tex. Crim. App. 2008); *Thompson v. State*, 95 S.W.3d 469, 471 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Under article 64.03, a convicted person is not entitled to DNA testing unless he first shows that there is "greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results." *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (quoting *Prible*, 245 S.W.3d at 467–68); *see also Smith v. State,* 165 S.W.3d 361, 364 (Tex. Crim. App. 2005). This burden is met if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish, by a preponderance of the evidence,

that the defendant would not have been convicted. *Gutierrez*, 337 S.W.3d at 889. "A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Gutierrez,* 337 S.W.3d at 892 (citations omitted).

### 3.    Analysis

Brooks argues that he would not have been convicted if exculpatory DNA test results were obtained from the complainant's fingernail scrapings. He asserts that such results would contradict the complainant's testimony that Brooks was her attacker and create a reasonable doubt about the attacker's identity.

However, Brooks does not articulate how the absence of his own DNA in the complainant's fingernail scrapings would be exculpatory in light of the strong evidence that implicates him, including the evidence that the complainant was restrained with a telephone cord during the attack. There is no evidence that the complainant scratched her attacker such that DNA testing of her fingernail scrapings would provide evidence indicative of her attacker's identity. Additionally, it is undisputed that the complainant identified Brooks as her attacker and provided the police with Brooks's name and address. It is also undisputed that Brooks's palm and fingerprints were found in blood in the complainant's residence following the attack.

In *Ex parte Gutierrez*, the Court of Criminal Appeals affirmed the denial of a motion for post-conviction DNA testing and held that the appellant had failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory test results were obtained from the victim's fingernail scrapings. 337 S.W.3d at 900–01. The *Gutierrez* court reasoned that there was no evidence that the victim was able to hit or scratch her murderers with her fingernails; so, even if DNA was found under her fingernails, there was no way of knowing whether it came from her murderers. *Id*. at 901. Ultimately, the Court found that DNA testing would "merely muddy the waters" because a third-party match to the requested biological evidence would not overcome the "overwhelming evidence" of appellant's involvement in the murder. *Id*. at 901–02.

Here, as in *Gutierrez*, there is no evidence that any DNA found in the complainant's fingernail scrapings belonged to her attacker. Thus, even if the complainant's fingernail scrapings were tested and produced evidence of a third person's DNA, excluding Brooks as the donor of the material, such results would "merely muddy the waters." *See Gutierrez*, 337 S.W.3d at 901; *cf. Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007) (reversing denial of motion for DNA testing where appellant showed by a preponderance of evidence that victim's lone attacker would be donor of material for which appellant sought testing and thus, exculpatory test results would establish appellant's innocence).

Given the other incriminating evidence—namely, the complainant's identification of Brooks as her attacker and Brooks's palm and fingerprints in blood at the crime scene—we cannot conclude by a preponderance of the evidence that Brooks would not have been convicted if exculpatory test results from the complainant's fingernail scrapings were obtained and presented at trial. *See Gutierrez*, 337 S.W.3d at 902. Thus, we do not find that the trial court erred in denying Brooks's motion for post-conviction DNA testing. *See Rivera*, 89 S.W.3d at 60–61 (affirming denial of motion for DNA testing and finding evidence insufficient to establish that absence of DNA under murder victim's fingernails and negative result from rape kit would have changed outcome of trial); *Thompson*, 95 S.W.3d at 471 (affirming denial of motion for post-conviction DNA testing and holding that even if negative test results were to supply an exculpatory inference, such an inference would not conclusively outweigh other evidence of appellant's guilt).

We overrule Brooks's first issue.

## B.    Ineffective Assistance of Counsel

### 1.    Applicable Law

To prevail on an ineffective assistance of counsel claim, an appellant must first prove by a preponderance of the evidence that his counsel's representation fell below the objective standard of professional norms. *Strickland v. Washington*, 466

8

U.S. 668, 687–88, 104 S. Ct. 2052, 2064–65 (1984); *Bell v. State*, 90 S.W.3d 301, 307 (Tex. Crim. App. 2002) (en banc). He must then show that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *See Bell*, 90 S.W.3d at 307. The record on a direct appeal will often be inadequate to determine whether counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that her conduct was reasonable and professional. *Id*.

The Court of Criminal Appeals has not yet decided whether an appellant may raise a claim of ineffective assistance of counsel in a direct appeal from a denial of a motion under Chapter 64. *See id.* However, in *Bell*, the Court concluded that assuming, *arguendo*, that such a claim may be raised, it would be analyzed under the *Strickland* test. *Id*.

### 2.    Analysis

Brooks asserts that if his motion for post-conviction DNA testing is unsupported by sufficient evidence, his court-appointed counsel Smith was ineffective because she failed to file supporting affidavits and other documents she reviewed in the course of her investigation. He argues that Smith should have put

"into the record all evidence that would support the client's motion for DNA testing, even though she concluded that it was insufficient to entitle him to relief."

We have previously stated that "a convicted person is, by statute, entitled to counsel during a proceeding under Chapter 64 of the Code of Criminal Procedure," but "a legislative decision to provide appointed counsel for a prisoner mounting a post-conviction collateral attack does not trigger a constitutional right to effective representation in that proceeding." *Kitt v. State*, No. 01-04-00633-CR, 2005 WL 2385619, at *2 (Tex. App.—Houston [1st Dist.] Sept. 29, 2005, pet. ref'd). However, assuming, *arguendo*, that we were to recognize an ineffective assistance claim in connection with representation in a Chapter 64 proceeding, Brooks would then be required to establish by a preponderance of the evidence that Smith's representation fell below the objective standard of professional norms and prejudiced his defense. *See Bell*, 90 S.W.3d at 307.

Brooks fails to explain how Smith's alleged error—failing to enter the affidavits and documents she reviewed during her investigation into the record—impacted the trial court's ruling on his motion for post-conviction DNA testing. The trial court denied Brooks's motion because it determined that identity was not an issue and exculpatory DNA test results would not establish that Brooks would not have been convicted. Brooks fails to articulate what information, if any, the alleged missing documents contain that would have altered the trial court's conclusion.

10

Specifically, he does not assert how the documents would establish (1) that identity is or was an issue in the case and (2) that exculpatory DNA test results from the complainant's fingernail scrapings would exonerate him. Thus, Brooks does not explain how he was prejudiced by Smith's performance.

Because Brooks has not shown that Smith's actions prejudiced the outcome of his motion for DNA testing, he fails to satisfy the second prong of *Strickland*. Accordingly, we hold that even if Brooks could raise an ineffective assistance claim in his post-conviction proceeding, he has failed to establish that he received ineffective assistance. *See Bell*, 90 S.W.3d at 307 (finding no ineffective assistance of counsel in Chapter 64 proceeding, noting that "the record does not show that the alleged errors had any impact on the court's ruling, nor does it show that the claimed 'missing' evidence existed or even what evidence appellant wished counsel to introduce"); *see also Williams v. State,* No. 01-04-00772-CR, 2005 WL 678873, at *5 (Tex. App.—Houston [1st Dist.] March 24, 2005, pet. ref'd) (not designated for publication) (finding insufficient evidence to establish by a preponderance of evidence that counsel's representation in post-conviction Chapter 64 proceeding was deficient); *Eubanks v. State*, 113 S.W.3d 562, 566–67 (Tex. App.—Dallas 2003, no pet.) (concluding that even if defendant could bring an ineffective assistance of counsel claim related to his post-conviction motion for DNA testing and assuming counsel performed deficiently, evidence did not establish defendant was prejudiced).

Accordingly, we overrule Brooks's second issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).